

-1-

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 25-cr-170 MJM |
| | ) |
| LUKE ANTINONE | ) (Conspiracy 18 U.S.C. § 371; Forfeiture, |
| | ) 18 U.S.C. § 982, 21 U.S.C. § 853(p)) |
| Defendant. | ) |
| | ) |
| | ) |

## INFORMATION

### COUNT 1
### (Conspiracy)

The United States Attorney alleges that:

At all times relevant to this Information:

#### Introduction

1. The Defendant, Luke Antinone ("ANTINONE") was a resident of Maryland.

2. MagicFakeID and OldIronSide were websites run by individuals based in mainland China, and offering false identification documents for sale to individuals in the United States. These false identification documents (hereinafter "fake IDs") offered by these websites included false driver licenses appearing to be issued by U.S. states, and included security features common on may state driver licenses. For example, MagicFakeId's website stated they produced the highest quality fake IDs on the market with features such as scannable barcodes, color matching and the ability to pass blacklight and bend tests.

3. A "peer-to-peer" account is a payment systems allow individuals to directly transfer funds to each other via digital platforms or mobile apps, bypassing traditional banking intermediaries.

### The Conspiracy

4. On or about June 1, 2020, and continuing until at least on or about August 1, 2021, in the District of Maryland and elsewhere, the defendant,

**LUKE ANTINONE**,

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown, to commit and attempt to commit an offense against the United States, to wit, transfer of false identification documents, in violation of 18 U.S.C. § 1028(a)(2).

### Object of the Conspiracy

5. It was the object of the conspiracy for **ANTINONE** and his coconspirators to unlawfully enrich themselves and others by selling and transferring fake IDs, produced in mainland China without lawful authority, to individual buyers throughout the United States.

### Manner and Means of the Conspiracy

It was part of the conspiracy that:

6. The websites MagicFakeID and OldIronSide (hereinafter, the "websites") would offer fake IDs for sale over the internet. The websites' proprietors were located in mainland China.

7. MagicFakeId's website stated they produced the "highest quality fake IDs on the market with features such as scannable barcodes, color matching and the ability to pass blacklight and bend tests."

8. Customers located in the United States would order a fake ID through one of the websites, upload a driver license-style headshot picture, and receive instructions on how to submit payment for their fake ID.

9.  The websites' payment instructions would direct customers to send funds to **ANTINONE** via a peer-to-peer payment platform.

10. After receiving funds for customers' fake ID orders via peer-to-peer platforms, **ANTINONE** would transfer the funds into his personal checking account at a large U.S. banking institution.

11. A representative from the websites would contact **ANTINONE** daily to verify which customers had paid for their fake ID orders.

12. **ANTINONE** would check the representative's list of customer orders against deposits received in his peer-to-peer accounts.

13. Deposits for fake ID orders received by **ANTINONE** would include a customer's order number, and frequently included notations such as "fakes, fake ID, fake ID order, phakes (sic), magic fake ID," or "order/gift".

14. After verifying which customers had paid for their orders, the websites' representative would then instruct **ANTINONE** to send the customers' payments to the websites' proprietors via bulk international peer-to-peer transfers.

15. The websites' peer-to-peer accounts were registered to Chinese individuals with addresses, financial institutions, and IP address activity located in mainland China.

16. When initiating these international peer-to-peer transfers, **ANTINONE** would put coffee and money sign emojis in the notes section to obfuscate the true source of the funds. In addition, **ANTINONE's** peer-to-peer account display name was "Luke Antinone Online," which gave the appearance that these large transfers were coming from a legitimate online business.

17. The fake IDs were produced in mainland China and shipped to customers in the United States, often using a drop shipper in the United States before being forwarded to the customer.

18.  The fake IDs were often shipped from mainland China to the United States concealed in other, seemingly legitimate merchandise, in an attempt to pass through customs inspections.

## Overt Acts

19.  In furtherance of the conspiracy and to achieve its purposes, the following overt acts, among others, was committed by **ANTINONE** in the District of Maryland:

20.  On or about June 21, 2021, **ANTINONE** conducted an international peer-to-peer transfer in the amount of $1,831.34, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

21.  On or about June 21, 2021, **ANTINONE** conducted a second international peer-to-peer transfer in the amount of $1,820.49, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

22.  On or about June 21, 2021, **ANTINONE** conducted a third international peer-to-peer transfer in the amount of $1,767.01, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

23.  On or about June 21, 2021, **ANTINONE** conducted a fourth international peer-to-peer transfer in the amount of $1,195.49, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

24.  On or about June 21, 2021, **ANTINONE** conducted a fifth international peer-to-peer transfer in the amount of $775.87, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

25.  On or about June 21, 2021, **ANTINONE** conducted a sixth international peer-to-peer transfer in the amount of $765.31, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

26. On or about June 22, 2021, **ANTINONE** conducted an international peer-to-peer transfer in the amount of $2,200.84, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

27. On or about June 22, 2021, **ANTINONE** conducted a second international peer-to-peer transfer in the amount of $501.31, consisting of funds from customers' fake ID payments, to an individual located in mainland China.

18 U.S.C. § 371

## FORFEITURE ALLEGATION

1. Upon conviction of an offense set forth in Count One of this Information, the defendant,

**LUKE ANTINONE**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any property constituting, or derived from, proceeds the Defendant obtained directly or indirectly, as the result of the offense.

### Substitute Assets

2. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or,

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C § 982(b)(1) and 28 U.S.C. § 2461(c).

18 U.S.C. § 982(a)(2)(B)
21 U.S.C. § 853
Fed. R. Crim. P. 32.2(a)

By: *[signature]* AUSA Steven Brantley

Kelly O. Hayes
United States Attorney

6/10/2025
Date